IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA, FOR THE USE OF CHEROX, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TRAVELERS CASUALTY & SURETY COMPANY,**<br><br>**Defendant.** | **CIVIL NO. 14-1819 (PAD)** |

## OPINION AND ORDER

Delgado Hernández, District Judge

United States of America for the use of Cherox, Inc. ("Cherox"), initiated this action against Travelers Casualty & Surety Company ("Travelers") under the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, seeking recovery under a payment bond related to a construction project located in the U.S. Virgin Islands ("U.S.V.I.").

Before the court is Travelers' "Fed.R.Civ.P. 12(b)(3) Motion to Dismiss, or in the alternative, for Transfer of Venue Pursuant to 28 U.S.C. § 1406" (Docket No. 13), which Cherox opposed (Docket No. 18). Travelers replied (Docket No. 22), and Cherox sur-replied (Docket No. 29). For the reasons below, Travelers' request is GRANTED IN PART, and the case is transferred to the District Court of the U.S.V.I.

## I.   BACKGROUND

Tip Top Construction Corporation ("Tip Top"), was awarded by the U.S.V.I. Water and Power Authority ("WAPA") the winning bid in an auction to develop a Water Distribution System in the U.S.V.I. (Docket No. 1 at p. 4). Pursuant to the terms of the contract, Tip Top agreed to

Case 3:14-cv-01819-PAD   Document 33   Filed 07/15/15   Page 2 of 5

United States of America for the use of Cherox, Inc. v. Travelers Casualty & Surety Company
Civil No. 14-1819 (PAD)
Opinion and Order
Page 2

provide manpower; personnel; workforce; labor; materials; tools; supervision for the installation of the water main; equipment; safety devices and insurance necessary for the installation of water mains; and customer service connections in the project.  In return, Tip Top would receive $4,000,000.00.  Id. at pp. 4-5.

As surety, Travelers, agreed to be bound jointly and severally with Tip Top, in the event the latter failed to make payment to any person with which it had a direct contractual relationship or any subcontractor who furnished labor, materials or both during the completion of the project. Id. at p. 5.  Tip Top then subcontracted Cherox – a Puerto Rico-based corporation and plaintiff in this action – to provide equipment and perform certain project-related tasks in exchange for $1,600,000.00.[1]  Id. at pp. 6-7.  Cherox claims it had no control of, nor was it responsible for the logistics and delivery of all required materials, some of which Tip Top had agreed to deliver.  Id. at pp. 8-9.

According to Cherox, Tip Top failed to timely provide some of these materials, including pavement, as a result of which Cherox had to incur in unforeseen delays and costs.  Id. at pp. 10-12.  Despite this, Cherox completed its part of the project, and was paid $1,153,668.80. Subsequently, the valve covers provided by Tip Top had to be replaced, and because Cherox's personnel had returned to Puerto Rico, the parties agreed that Tip Top would replace them and deduct $19,376.00 from the $537,917.20 owed to Cherox.  Id. at p. 14.  After a dispute with WAPA, Tip Top refused to pay the outstanding balance owed to Cherox, which in turn, sent a claim to Travelers for $518,541.20.  Id. at p. 15.  Travelers denied Cherox's claim, and this case ensued.

---

[1] Specifically, Cherox agreed to provide the necessary heavy equipment, tools, personnel, labor, workforce and manpower, all related and indispensable administrative work, handling of payroll, supervision for the installation of the water main, equipment, safety devices and insurance necessary to enable the installation of approximately 25,000 linear feet of pipes for potable water, including water mains and customer service connections for the project.  Further, it agreed to conduct soil testing, which required picking up on-site samples to test them in Puerto Rico.  Id. at p. 7.

Case 3:14-cv-01819-PAD   Document 33   Filed 07/15/15   Page 3 of 5

United States of America for the use of Cherox, Inc. v. Travelers Casualty & Surety Company
Civil No. 14-1819 (PAD)
Opinion and Order
Page 3

Travelers contends the case should be dismissed or otherwise transferred to the District Court of the U.S.V.I., where the project is located. In addition, it argues that under the subcontract, Cherox agreed to submit any disputes related to the project to an arbitration forum at the location of the project, namely, the U.S.V.I. (Docket No. 13). Cherox posits that venue is proper because it performed in Puerto Rico substantial and indispensable portions of the work required by the agreement (Docket No. 18).[2]

## II.  DISCUSSION

"[T]he Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project." F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc., 417 U.S. 116, 121-122 (1974). It contains a venue provision, under which any action initiated must "be brought in the name of the United States for the use of the person bringing the action, and in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3).

The parties disagree as to which venue is proper here, and Courts are divided on the matter. *Compare* U.S. ex rel. Norshield Corp. v. E.C. Scarborough, 620 F.Supp.2d 1292, 1296 (M.D. Ala. 2009)(venue is proper in any district in which prime contract for government is performed and executed; namely the location of government project site), *and* U.S. ex rel. Straightline Corp. v. CNA Surety, 411 F.Supp.2d 584, 585 (W.D.Pa. 2006)(proper venue for Miller Act action is district in which government project is located, not where substantial amount of work performed); *with* United States for the Use and Benefit of Expedia, Inc. v. Altex Enters., Inc., 734 F.Supp. 972

---

[2] In this regard, Cherox claims that it was in Puerto Rico where it: (1) obtained all the necessary equipment and insurance; (2) hired personnel; (3) handled the payroll; (4) analyzed soil tests samples; (5) performed all project administrative work; and (6) developed the "as-built" drawings and the "RFI."

Case 3:14-cv-01819-PAD   Document 33   Filed 07/15/15   Page 4 of 5

United States of America for the use of Cherox, Inc. v. Travelers Casualty & Surety Company
Civil No. 14-1819 (PAD)
Opinion and Order
Page 4

(M.D.Fla. 1990)(any district in which any substantial aspect of contract performance takes place is a proper venue for Miller Act claims). Upon evaluating Travelers' motion and related filings, however, transfer to the U.S.V.I. is warranted. See, 28 U.S.C. § 1404(a).[3]

Foremost, the object of the contract between Cherox and Tip Top was to "enable the installation of the pipes for the water system project" located in the U.S.V.I. (Docket No. 1 at p. 6). The contract itself was agreed to in the U.S.V.I. (Docket No. 22 at p. 7). From the complaint, it is apparent that the contract was to be "performed and executed" in the U.S.V.I. rather than in Puerto Rico.

To comply with the terms of the agreement, Cherox was required to (1) cut through the pavement and remove the soil to build a trench; (2) compact the trench's bed; (3) set a layer of sand to create a bedding; (4) install a communications conduit, a solid core copper wire and then the PVC pipe for the waterline; (5) cover the installed pipe with the sand bedding; (6) compact the sand bedding; (7) back full the trench with Crusher Run and compact the soil in order to be paved; and (8) cover the trench with the temporary pavement, which allegedly was to be provided by Tip Top (Docket No. 1 at p. 9).

All of these tasks were completed in U.S.V.I. soil. Id. Moreover, Tip Top's alleged breach of contract giving way to this action occurred in the U.S.V.I. And Travelers asserts – an assertion Cherox does not contest – that in its subcontract with Tip Top, Cherox agreed to submit any project-related dispute to an arbitration forum at the location of the project, namely, the U.S.V.I. (Docket

---

[3] This provision permits a district court to transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." When evaluating a Section 1404(a) motion, courts should employ a relaxed standard. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). Transfer determinations are fact-specific and depend on the particular circumstances of each case. See, Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239 (1988); see also, Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); Arroyo-Pérez v. Demir Group International, 733 F.Supp. 2d 314, 318-319 (D.P.R. 2010).

Case 3:14-cv-01819-PAD   Document 33   Filed 07/15/15   Page 5 of 5

United States of America for the use of Cherox, Inc. v. Travelers Casualty & Surety Company
Civil No. 14-1819 (PAD)
Opinion and Order
Page 5

No. 13 at p. 4). If the case were to proceed before this court, Travelers would be entitled to request that this case be stayed pending the result of any arbitration, which, as specified in the agreement, must take place in the U.S.V.I. See, United States ex rel. Wrecking Corp. of Am. v. Edward R. Marden Corp., 406 F.2d 525, 526 (1st Cir. 1969)(giving procedural priority to arbitration over a Miller Act claim). Thus, transfer, rather than dismissal, is in the interest of justice in this case.[4]

### III.  CONCLUSION

In light of the foregoing, and because the contract here was to be performed and executed in St. Thomas, U.S.V.I., Travelers' motion at Docket No. 13 is GRANTED IN PART and the case is transferred to the District Court of the U.S.V.I. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of July, 2015.

                                                        S/Pedro A. Delgado-Hernández
                                                        PEDRO A. DELGADO HERNANDEZ
                                                        U.S. DISTRICT JUDGE

---

[4] Although the court gives proper weight to Cherox's choice to file suit in this district, Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 13 (1st Cir. 2009), it cannot ignore the degree of activity occurring outside of Puerto Rico, in the U.S.V.I.